Good morning. May it please the Court, I'm Julie Hall with Amy Krauss on behalf of Mr. Styers. I'd like to reserve five minutes of my time for rebuttal. I think you need to speak a little louder or maybe bring the microphone closer to your mouth. Is that better? It is better. Okay. Thank you, Your Honor. Following this Court's grant of the writ of habeas corpus through the District Court, the Arizona Supreme Court committed a number of errors in its subsequent review of Mr. Styers' case. I'd like to touch on about three of those this morning. The first was that the Arizona Supreme Court, although it reopened direct review following this Court's grant of the writ, the Court refused to apply the governing Supreme Court law at that time, a set forth in Ring v. Arizona, to Mr. Styers' case. The case, although the parties agreed that the case had become final in 1994 with the, after the first direct appeal and the issuance of the mandate in the case and denial of cert, the case then, finality was then disturbed not only by this Court's grant of the writ of habeas corpus, but also by the Arizona Supreme Court's action in accepting the case for a new review. And we know the case was on direct review because the State filed its motion under the direct appeal case number. The appeal itself was made available by the Supreme Court to Mr. Styers. And there's no dispute that cert was available. It was sought and it was not dismissed for lack of jurisdiction. Most importantly, the error in question occurred on direct appeal, so direct appeal was the place where the error had to be corrected. Scalia. Why would it have been dismissed for lack of jurisdiction? The State, first in its answering, in its brief in opposition in the cert proceedings, didn't make the argument that the U.S. Supreme Court didn't have direct review jurisdiction over the case, and cert was denied without comment rather than dismissed. So there was no indication that there was, that it was anything other than a cert denial. I understand that, but under what circumstances would the Court have dismissed the petition for lack of jurisdiction? The State could have moved or argued in its brief in opposition that there was no jurisdiction and asked that the case be dismissed. And what would have been the basis for the argument that there was no jurisdiction? The State's argument was that the cert petition was filed off of the direct appeal. The State's argument would have been consistent with their arguments below and what the Arizona Supreme Court found, that, in fact, this wasn't a reopening of the direct appeal, and, therefore, there couldn't have been cert off of that direct appeal. But that argument was never made. And in fact, I think of all the factors, that may be actually the least important. I think it's far more important that this was an error that occurred on direct appeal. The Arizona Supreme Court reopened the direct appeal to attempt to correct it, and then used a statute that is only used in direct appeals in capital cases in Arizona to make that correction, and then issued a mandate after its decision. Mandates in Arizona are only issued off of direct appeals. So all of those factors together indicate that this was, in fact, a reopening of the direct appeal. If it wasn't a direct appeal, if it wasn't a direct appeal, what could it have been? What would it have been? Would it have been a habeas? What is this? What would it have been? The only other proceeding in Arizona for review of capital cases by the Arizona Supreme Court is a – well, I should say two. One is a special action. There's no question in this case that this wasn't a special action. And two is post-conviction. And this – we also know this wasn't a post-conviction because 13755, the independent review statute, has never in the history of capital jurisprudence in Arizona been used until this case, presumably or allegedly, been used in a state post-conviction. 1375 just simply doesn't fit into state post-conviction in Arizona because it's a mandatory statute. As the Arizona Supreme Court admitted, 13755 requires that court to review the death sentence in every case. Petitions for review, the Supreme Court's review in state post-conviction in Arizona is a purely discretionary proceeding. They're never required to take any – Kennedy. Ms. Hall, the Arizona Supreme Court did not agree with you. That's correct. On page, I think it was footnote 1, page 6, they dealt with this exact argument. And they said that the majority, 4 to 1, found that 17355 required them to do an independent review of every death sentence, and that's what they were doing. Now, implicit, I think, in that is the determination that this was not a reopening of a direct appeal. Would you agree with me with that? That that was what they were saying. That's what they were saying. I agree that that's what they were saying, yes. You may agree with Justice Hurwitz, now Judge Hurwitz, that they were wrong, but that's what they were saying. They were saying this is not the reopening of a direct appeal. We do not have to apply ring. Right? They said that. Yes. That adjudicated the prisoner's Federal constitutional right to have a ring hearing, correct? Right or wrong, but it adjudicated it. Well, it wasn't. It determined it. They determined it. They determined it, right? However, they used a procedure that. Let me ask you this question. If the determination by the Arizona Supreme Court was that this was not a reopening and this was simply a correction by some never-before-used system of collateral review, which I just made up on the moment. That's the way they determined the state law to be. Under 2254 D1, would you please tell me why that decision is contrary to or an unreasonable application of a clearly established Federal right by a decision, not dicta, but a holding of the Supreme Court? Give me the case that tells me that. I just want to make sure I understand your question, that when you say the decision in question, do you mean the decision that there is such a procedure in Arizona, or do you mean the substantive decision on the surface? The bottom line. The bottom line was we can use 17355. It isn't the reopening of a direct appeal. He has no right to a ring hearing. We've committed no error. But we disagree with the Ninth Circuit. We'll do it again. And this do-over has the same result. All of that is a determination that he has no Federal right to a ring resentencing. Correct? Yes. All right. Why is that contrary to or an unreasonable application of a clearly established law as established by the Supreme Court of the United States in a holding? What case? It's a violation of the clearly established law in Lockett and Eddings and also in Tenard, Your Honor. The what the Arizona Supreme Court proceeded to do, and this moves on to the recently certified question, and that is, and there were also a number of errors committed there. Now, Lockett and Eddings told us that they had to consider mitigation evidence regardless whether it had annexes to the commission of a crime. But was there a case? Can you tell me any case that says that a State inventing a new collateral review system all for one case, never used before, as I agree with you on that, can't do that without violating a Federal constitutional right of the prisoner? Those are the cases we cited at around pages 45 and 51 of the opening brief, Your Honor, that I know. Was there ever a case on all fours that you can cite me to that has ever happened before? What's your best case? I'm not aware of a case exactly like this, Your Honor. But what those cases say is that you. But think back. We had a case where we were reversed by the Supreme Court in a quite different factual setting, where the Supreme Court said just that, there's no case that says that private persons wearing buttons in a criminal trial, musladin, is a violation of any clearly established Supreme Court case. So what I'm looking for is a clearly established Supreme Court case that says a State cannot invent a new collateral review procedure and say we are not opening up the case for final review, you do not get a ring hearing, we're using the statute which we read, it's a State statute, to allow us to do a second independent review without opening up the finality of the direct review. Where is that violative of any clearly established Supreme Court case? There are a couple of cases, Your Honor, and it needn't be necessarily on all fours. It can be analogous. But if it's an unreasonable application of a case. And so Vacco v. Quill says that. Say again. Vacco v. Quill, U.S. Supreme Court's 1997 case, says that States must treat like cases alike. And so the application of that in this case would be Mr. Stiers should have available to him the same procedures that other capital defendants in Arizona have, and vice versa. He shouldn't be subject to a procedure that is not that other defendants have. Has any capital defendant in Arizona attempted to use 17355 for an independent review and been denied it? Yes, at least twice, Your Honor. Jesse Gillies, in 1999, before he was executed, asked the Court to look at his to relook at his, the independent review, the mitigation. And what was the name of that case? Is that cited in the? It's Gillies, G-I-L-L-I-E-S. I see. That decision might be, it might be an unpublished order, but I can certainly supplement the record with a copy of that order. And similarly. You don't want to say supplement the record. You want to provide additional authority. Yes, Your Honor. I'm sorry. Thank you. Yes. If it's not in the briefs, do afterwards provide us. We used to have gum sheets. Do we still have gum sheets? Very, very ancient. We used to use them when I was clerking. We still use them in the Internet age. We will, Your Honor. So go ahead and court counsel will write down the cases. And the second case is Robert Mormon's case, which was in 2012. I'm sorry. Mormon? Mormon. And shortly before Mr. Mormon was executed, we asked the Arizona Supreme Court and we specifically cited them to Stiers. And we said, you indicated in Stiers that there is this review available even outside of direct review. Mr. Mormon has significant additional mitigation that's never been considered. We want to present it now and have a re-independent review. And that was likewise denied. With any explanation? Not that I recall, Your Honor. Both these cases resulted in denials with what we call postcard denials? That's my memory, but we will certainly double-check. All right. So your theory is that it's a violation of the prisoner's equal protection rights under the Fifth Amendment for him to be subjected to an independent review as a collateral review vehicle when it's never been used other than in direct review in Arizona? That's correct, Your Honor. And the Bush v. Gore and the cases cited in Bush v. Gore explain that as well, that to have a State procedure that's sort of invented to apply to one person or a class of people or to subvert the law. Or one election. Exactly. It violates due process and equal protection. And so that, I think, is the clearly established law in this case. Okay. As far as the ring remand itself, the F6 finding, and the State never argued and neither did the Arizona Supreme Court, that the lack of a jury finding was not harmless as to the F6 finding, which is Arizona's cruel, heinous, and depraved. So if ring applies to this case, as we argue, then a remand is required and the State has conceded a remand would be required for a jury determination of F6. In addition, the Arizona Supreme Court conceded that a ring remand would be required if ring applied to mitigation findings. And the Arizona Supreme Court had actually previously said in ring that the jury's finding of whether the mitigation is sufficiently substantial is a ring finding and is a required finding for death eligibility in Arizona. They didn't discuss that in this case. Subsequently, this court has decided Murdaugh, the capital case from Arizona, which does make it clear that that is an eligibility factor in Arizona, that determination. So the Arizona Supreme Court, in light of Murdaugh, it seems, has conceded that a remand was required in their review. Kennedy. The Arizona Supreme Court really went off on the basis that only aggravating factors have to be reconsidered in a ring review, but that is no longer the law in the Ninth Circuit under Murdaugh. That's right. You have to consider both aggravating and mitigating. And it really wasn't the law in Arizona, either. But they just didn't discuss that in the Steyer's opinion. Another error, and this is somewhat interrelated at points, but even an additional separate error, is the Arizona Supreme Court's practice of discounting mitigation evidence to irrelevancy when it is not causally connected to the crime. And, of course, as we've argued in the briefs, we think that this mitigation is very much causally connected to the crime and that the Arizona Supreme Court erred in that regard. But the even more clear error is this finding that the what they call little weight and is essentially the Arizona Supreme Court saying it just really isn't going to consider it. It says it considers it. It really doesn't. And the reason we know, two reasons we know, one is the history of this Court. They have never, and the State did not cite in their answering brief, they didn't identify one case in which the Arizona Supreme Court has ever given non-causally connected mental health mitigation evidence more than de minimis weight. And what de minimis weight means in Arizona is it's the Arizona Supreme Court's view that that mitigation could never result in a sentence less than death. So although they certainly are aware that they're required to consider this type of mitigation, they have never and did not in this case give it any kind of weight. And so the result and the second rule of law. Kennedy, does that indicate consideration? No, Your Honor, because the consideration has to be meaningful. I don't know if there's a good analogy, but, you know, I don't know. If it says I don't give it any weight, and I gather that's what you're arguing was said here, doesn't that mean I've considered it and I give it no weight? It has to be meaningful, meaningfully considered, Your Honor. So. What do you mean meaningfully considered? Do you mean you have to have a 5 percent grant rate or 10 percent, 25 percent? I don't think so, Your Honor, but certainly more than zero. Why? So if, well, this case is a perfect example of that, because what they. I mean, there's so many variables in considering the mitigation evidence. It depends on the brutality of the crime. All these crimes are different. It depends on, on the other hand, the humanizing effect of any mitigation evidence. Different people can view humanizing effect differently. I don't know what your. When you ask us to adopt a rule saying they don't really consider this because it's not meaningful, give me the objective standards by which I can determine when it's meaningful and when it's not. Well, Your Honor, the first is historically. And here's, I guess, the difference is they're not saying, boy, this evidence is substantial. This man has a 20-year history of a traumatic brain injury and severe post-traumatic distress disorder that results in. But that's not what the Supreme Court said the first time around. They said this could be mitigation. However, two doctors have said that it's not connected, therefore, right? And that's why we granted, we reversed the denial of habeas. But they did recognize that it could be mitigation evidence, but they weighted and found, compared to the aggravating circumstances, which were stipulated, which were not appealed from, that it didn't have any weight. What's wrong with that? Because this is the type of mitigation evidence that does have significant weight. It doesn't dictate the result. It doesn't dictate that they find it sufficiently substantial. But what they found was that it actually had little weight. And so, and here's, and what they really did was give it de minimis weight, which is zero. And here's how we know that. And zero is what they can't give it. Regardless of what percentage, and I don't think this Court can set a certain percentage of how much weight counts as true consideration, but we know that zero doesn't count. Here's how we know they gave it zero. Because in Arizona, under the Bible line of cases, when the Arizona Supreme Court is reviewing a capital sentence, if there is an error in the sentence, that's a given in this case. We know there was an error because this Court said so. When there's an error in the sentence, if there is more than de minimis mitigation, they can't do the reweighing themselves. They have to remand for a new sentencing. So because they didn't remand, because they didn't comply with the Bible line of cases, and we know that they were actually, despite what they said, they were actually giving this mitigation zero weight. I'm sorry. In what case or case? These are State cases, I say that. State v. Bible is the first case, Your Honor. Bible. Bible. Richard Bible's case. And then a very good example is Gallegos. This State v. Gallegos that came out actually the year after the first buyer's opinion. In that case, the Court found an error in consideration of some of the mitigation evidence, and they said the facts of the case were very aggravated. The defendant had kidnapped and sexually assaulted an 8-year-old girl, and then the next morning killed her with his bare hands, hit her in the woods, and then participated in a feigned search for her, specifically avoiding the areas where he knew he had hidden the body. Sounds familiar. Despite how aggravated that case was, the Arizona Supreme Court said, because there was an error in the sentencing, we can't do the sentencing under independent review. Our rule requires us to remand unless we can look at the mitigation and say it essentially has zero weight, unless a life sentence is absolutely not possible, unless it's beyond question that there's nothing to weigh. Those standards aren't only in Gallegos. They're from other cases between Bible and Gallegos, but the point is that's their rule. Under their independent review, if there is anything to weigh at all, they have to remand it. They don't do the sentencing themselves. And so in this case, they didn't remand. That's how we know they considered this mitigation zero, to be zero weight. And this ---- Hold on. Excuse me. Go ahead. I was just going to say, Your Honor, and this, again, is the type of mitigation, honorable service to his country in a time of war, no prior record ---- Can you believe shooting a 10-year-old child? Which was actually part of the post-traumatic stress disorder. Sadly, it was not uncommon in Vietnam for children to be packed with explosives and sent after American soldiers. And I think that's what made it so much more traumatic and so much more damaging to him. And then, of course, the very severe fracture of his skull that left him without the ability to walk and talk for some time after he returned when he was still serving. That's the kind of mitigation that, of course, sentencers can disagree about how it comes out when you weigh it against the aggravation in this case. But you absolutely cannot argue that it is zero. And that's how the Arizona court treated it. And you can answer it by saying it doesn't matter. If it's basic, is Mr. Stias admitting the acts of which he is accused but appealing his sentence, or is he appealing conviction and sentence, in your view? There are no issues left in this case, Your Honor, that go to his conviction. And the only issues left in this case go to his death sentence. I just want to be clear. Right. So regardless of the outcome of this case, at minimum, he would still have this conviction which results in a life sentence, consecutive to the conspiracy conviction that results in the life sentence, consecutive to the, I think, 22-year sentence on the kidnapping charge. And I want to ask you another question that is basic, and I point this out so that you understand at least a bit of the thinking that goes behind it. Is his position – no, I won't ask you. Go ahead. Thank you.  Good, because I would hate to not be able to answer a really basic question. You've got about six minutes left. Do you want to save it? Yes, I would, Your Honor. Yes, yes. I'd like to reserve that time. Thank you. Okay. We'll hear from the warden. May it please the Court. My name is Jeff Zick. I'm with the Arizona Attorney General's Office, and I represent Director Charles Ryan. The Arizona Supreme Court, based on this Court's order, cured the constitutional violation that this Court found. It considered Styer's post-traumatic stress disorder. It did so in the fashion that we've been talking about this morning under 13755, but that wasn't an invented procedure. That procedure had been used before. Well, let's say they had looked at that evidence and they had weighed it differently and they had said, you know, that really has a lot of weight, and we think the sentence has to be modified to a life sentence because it doesn't support a death sentence. Could they have done that? Yes, they could have. In fact, they did that in State v. Richmond. In Richmond v. Lewis. Stop. Stop. Yes. Okay. How could they do that without opening up the original judgment? Since the original judgment was for death, if they come out the other way, don't they have to open it up to change it to a life sentence? Well, by the fact of changing it to a life sentence, it would, I guess, open it up at that point. But it doesn't open up direct review when they consider it. For example. Well, how can the sentence be final if they are looking at it and they might change it, they might leave it the same. But, you know, how can it be final? I don't get it. Because it's final once that mandate issued. And in this case, the mandate. But if it's final, how can it be changed? How can they, if they are conducting their constitutional review, I mean, both required by the State law and by the Federal Constitution, and looking at the sentence, and how can they do that without opening up the judgment? Without how can it be final? That's a process that normally gets engaged in on direct appeal, right? They have to do it on direct appeal. Under State law, they do it under direct appeal. Well, not just under State law, under Federal law, too. They can't not do it. This is part of their constitutional, Federal constitutional duty, right? Yes. Okay. And at that point, the sentence is not final, and they can perform their duty. And if they say, oh, no, this is not a death case, they can reweigh the factors and change it to a life sentence, right? They can, but I think they can't. On direct appeal, they know that they can. No doubt that they can. If they couldn't, it would be unconstitutional. The death penalty statute would be unconstitutional. Yes. So how can they perform that very same function in this procedure without depriving the judgment as finality? They're opening it up to look as to whether they're going to – whether it's okay, whether it's properly weighed. They're weighing all the factors. There's no way for them to just weigh one factor, right? Because their constitutional duty is to weigh all the factors against each other. Isn't that right? Right. And they could – they could leave the death sentence, and they could change it to a life sentence, right? They could. But this really wasn't a true direct review or independent review from a direct appeal. For example – Well, if it wasn't a true independent review, then they haven't done what they're required to do under the Constitution, because at that point, we have said they didn't give any weight to the – to the – to the PTSD factor. They are required under the Constitution to give weight to all the factors under the Constitution to consider. And unless they perform a true constitutional review, then Mr. Stiles has never gotten that, which is what the Federal Constitution requires. They have to have gone in and re-weighed everything. You don't disagree with that, do you? No, I don't, Judge. But what this – How can you do that? Once you admit that, how can you do that without reopening up the judgment for them to do the re-weighing? Because the judgment had been final, and this Court essentially found a constitutional violation in the Clemens re-weighing of that mitigating factor. That didn't necessarily open up the entire judgment. And the Arizona – Well, that's what I'm trying to understand. How can you not open up the entire judgment when what they are required to do is weigh not just this factor, but all the other factors, and possibly change the result, change the judgment, change it to a life sentence? They couldn't – in fact, they had to have the power to do that when they were doing the re-weighing. They couldn't be in a situation where they said, we're going to re-weigh everything, but it's always going to come out as a death sentence, right? Right. So you had to have the power when they went in to weigh everything and say death or life. And they could have come out with life. I just don't understand how you can do that without opening up the judgment. Well, because it was really not a true independent review under the State system. Clemens allowed this – the Arizona Supreme Court to go in and look at this particular mitigating factor and re-weigh it with the other mitigation factors. It didn't go back and look at the aggravating factors, because there was no problem with the aggravating factors. So it was really a reconsideration of this particular mitigating factor that this Court found that the – I mean, the more you talk, the more it sounds to me like this was sort of a Mickey Mouse proceeding that didn't really do what the – what the Arizona Supreme Court didn't do what the Constitution required. I mean, it's supposed to look at everything. It's supposed to look at all the factors, weigh them against each other, and decide whether or not this meets the constitutional standard. They can't just sort of go in and look at one thing, right? Well, no. I didn't mean to say they just looked at one thing. They did look at how that affected all of the factors and whether death was the appropriate sentence. So in that respect, it did cure the Clemens error, but it didn't reopen the case for purposes of allowing – I guess that's what I'm trying to figure out. How can you do that? How can you, you know, sort of like doing surgery on a body without cutting into it? How can you – how can you be doing this weighing, this weighing of the factors, looking at all the parts of the judgment, but saying, oh, but we're not opening it up? I just – metaphysically, I don't quite know how this happens. And I agree it's a difficult question to answer when there is no – No, but we don't ask easy questions. It's nevertheless a question I would like you to answer. I'm trying to answer it, and I don't have a – You're not succeeding. I don't have a perfect answer for you. Why isn't the answer then it's not possible, and they messed up again, and we need to send it back and tell them you've got to do it right? No, they – Why isn't that the correct answer? Because the judgment had been final, and the Arizona Supreme Court had indicated – Final but wrong. Final but wrong. They did this thing. They botched it. So how can they go back and redo it and fix it without opening it up and robbing its finality? I don't know how to do this. I've been judging for long before you graduated from law school, and I don't know how to do it. I wish I could sometimes go back and change things without opening them up. Is it your position perhaps that if they consider the mitigation and find there's no reason to change the judgment, they're not opening the judgment? That's the argument that we have been making. Well, with respect to the finality of the judgment, the only example that I can give you in respect to what occurred here procedurally is State v. Richmond. In Richmond v. Lewis, the U.S. Supreme Court certified a question to the Arizona Supreme Court regarding their independent review. The Arizona Supreme Court did the same thing they did here and looked at it and then granted relief in that case. It didn't necessarily reopen the judgment, but the judgment had to be reopened. How do we know it didn't reopen the judgment? I don't think the Court mentioned or addressed the fact that it was reopening a judgment. It simply took the certified question. It didn't say we're not reopening the judgment. It did not say that we were reopening it. Okay. And it did, in fact, change the judgment. I'm sorry. It did, in fact? Change the judgment, right? Yes, after they reviewed it. So to anyone looking from the outside, why wouldn't you say, gee, it looks to us like they reopened the judgment, because you can't really change a judgment from one thing to another without reopening it. But I think once the change is ---- What is this, plastic surgery on judgment? I don't know. How is this done? Is it just someplace in Arizona things happen like that? Will it happen no place else on earth? No. I mean, this happens in Arizona. But Richmond doesn't help you at all, because it's not like they said we're doing it and we're doing it without opening up the judgment. They don't say that. No, they do not say that. But ---- So what why doesn't Richmond cut against you? Why doesn't Richmond, in fact, show that when they go in, they, in fact, can change the judgment, and that's an opening up? They don't say we're not doing it, so we're not going to have them impute on them and saying that any more than we'd impute on them saying, gee, we can fly without getting an airplane. We can just flap our arms and fly. I mean, we don't expect them to do things that are impossible. So why doesn't Richmond cut against you? It doesn't cut against us, because it doesn't analyze whether the judgment was reopened. It doesn't help you. It doesn't. I guess either way. But procedurally, that is another case that happened procedurally this way. The question is, what do you have as an example? You come up with Richmond, and the best we've gotten out of that is that it doesn't help you, possibly hurt you. I don't have any other examples of this procedurally, this type of case and the procedure that has gone on. I don't have any other examples. Why isn't Justice Hurwitz's dissent just right on target? I mean, what he says is, can't do this. We can't do this. It's not doable. And why isn't this just sort of like, you know, what they said in the majority opinion, we think the Ninth Circuit was wrong in Steyer's, and we're going to grit our teeth and pretend to do what they say, but we're not going to do it. We're not going to change our minds. Why isn't that what we read into that? Well, Justice Hurwitz's main argument to reopen the case was to send it back for jury sentencing based on a reading of the State statute. And the State statute, the majority found, didn't cut that way. Let me ask you a question. Richmond v. Lewis, was that pre-ring or post-ring? Pre. Okay. But Justice Hurwitz's decision was based on that State statute. And the majority of the Court found the State statute didn't really limit them with respect to opening cases up on direct review. It could look at any case where the death sentence was called into question. And this Court, in fact, called into question it. Is there any case before or after where they did what they did in Steyer's case? Before or after they did what they did. And before or after, since, going back to the dawn of history from today, except in Steyer's case where they took a case on and did a review of this other than on direct appeal. The only cases are this and Richmond. The other cases that opposing counsel mentioned, Ms. Hall, were, I believe ---- ---- Yes. So during the course of doing a certified question, they said, whoopsie, we goofed, we'll do it again. And we don't know whether they did or did not reopen that judgment. They changed the ---- You take the position that they didn't. My position is they reopened the judgment once they changed the judgment. I see. I'm sorry. So they do the reweighing, and when they're doing the reweighing, they decide we need to change it, then they reopen it. Then it's reopened and changed, yes. But if they do the weighing and come out to the same conclusion, they don't reopen it. The case is still final. That is our position. Are you sticking with it? Right now. Okay. Okay. Have they ever ---- we asked you this question. Has the Supreme Court ever given more than de minimis or minimal or no weight to adding factors, you know, things that don't contribute, have no ---- Causal connection. Yes. There are cases, and I think it's footnote 5 of this Court's Lopez v. Ryan decision, where the Arizona Supreme Court has looked at mitigating factors that don't rise to the level of causal connection that have garnered enough sufficient weight to give a life sentence, and those cases, I can file a 28-J letter with those cases. I thought that's what we asked you to do in our supplemental briefing. Well, I think this ---- well, I do recall the order, and it was asked, and I don't remember if we actually cited that. You didn't cite a case. Okay. We cited to Lopez, but I'm not sure we probably didn't cite, and I'm sorry for not citing those cases. But those cases are indications that the Arizona Supreme Court has looked at mitigating factors such as age, such as ---- It's not helpful. When we ask you to brief something, we mean for you to brief the thing we asked, not rail at us for being wrong the last time. We don't mind if you rail. That's perfectly fine. You can rail all you want, but we do want you to answer the question we asked. I apologize for not putting those cases in. I know we cited to Lopez, but, you know, again, I, you know, it's my fault for not putting those cases in. And you say that these cases are cited at footnote 5 in Lopez v. Ryan? In Lopez v. Ryan. I believe it's footnote 5. I have the cases. I know the cases. But there is ---- there are cases out there. Well, get a gum sheet and fill them out afterwards, but, you know, this is an awkward position because counsel doesn't get a chance to respond, and, you know, it does make it difficult. Why don't you at least mention the cases now in case she wants to talk about some of them in her rebuttal? Sure. State v. Trostle, it's at 951 Pacific 2nd, 869. The Arizona Supreme Court, they essentially looked at non-causally connected mitigating factors regarding abusive childhood. State v. Rockwell at 775 Pacific 2nd, 1069. The Court looked at age and character and background of the defendant in giving a life sentence. In State v. Bocharski, the Court gave a life sentence in part based on difficult family background, which wasn't necessarily causally connected. But when you look at the causal connection that the Arizona Supreme Court has gone through in looking at cases, there are cases out there where there has been significant mitigation regarding mental health that met statutory mitigating factors. The G-1 factor, which talks about whether an individual knows right from wrong, but it doesn't rise to the level of a defense, which is a causally connected mitigating factor. One of those cases is the Mormon case, where they found that G-1 factor, but they also found it wasn't sufficiently substantial to warrant leniency. So the Arizona Supreme Court has used this causal connection test as a weighing factor. Are you talking about Samuel Villegas Lopez v. Ryan? No, I think it's, I think it's, yes. Because I have a case here and there are no footnotes. It's not, it's. Pardon me, I'm wrong. There are two footnotes. You're saying footnote 5. I thought it was footnote 5, but those are the cases that it cites to in that case. What? You better get a blank from the judge and be a little bit more precise. Yeah. I apologize. It was the last Lopez v. Ryan case from 2012. Well, I have a 2012 case here, and I'll be glad to give it to you. And you tell me where there's some footnote 5, would you? Yeah. Okay. I'm sorry, Judge. This is not the right Lopez. I will find the right. I apologize again. Do you have a cite for our Lopez case? I do not write on hand. I have it in my notes somewhere that I would look for, and I can provide it to the Court before I leave today. And it dealt with the same Eddings error that was looked at in that case, and it cited those cases for the proposition that the Arizona Supreme Court has used the causal connection test in looking at non-causally connected mitigation rising to the level of sufficiency to the law. Let's see if I understand what you're saying. The cases say that the Arizona Supreme Court has used the causal connection test with mitigation evidence that is not causally connected? No, no. Try again. Yes. They have looked at mitigation that has not been particularly causally connected to the crime itself in finding those mitigating factors sufficiently substantial to call for leniency. To call for leniency from death penalty to life in prison. Correct. Okay. Correct. But it also has looked at the law. I'm sorry, but you were to submit those cases in answer to briefing. Your name was on the supplemental briefing. It is. And I apologize for not answering that direct question. You know, adding the word direct doesn't help you. You know, it's just sort of a lawyer's flourish that helps nothing at all. You just didn't answer the question. It's an unprofessional thing to do. And you really should not be standing there representing your client today without having done it. I mean, we had an interest in this. The brief has all sorts of stuff in it that was unnecessary and unhelpful to your client. But the things that we actually needed to know to be able to answer the question and consider your client's case, you didn't include. I don't know what was going through your head, but obviously you were not thinking like a lawyer. And I suggest you report this to your superior that we said this, because it's a disappointment. I certainly will, Judge. And your client. I certainly will. Okay. So we might as well go on. Do you have anything else to say? If the Court doesn't have any further questions on these issues, I don't have anything else. Thank you. You have some rebuttal time. We'll make an even six minutes. I'll give you 15 seconds. Mr. Hall, before you use up your time, do you have any comment on the cases that counsel did cite today, but not in his answer? Wait for the clock to get reset to six minutes. There we go. You two were very clear that there hadn't been one case where mitigation evidence that was not causally connected was used to mitigate a sentence from death to life. Right? He says there was. What about those cases? What we said, Your Honor, was that when it comes to non-causally connected mental health evidence, that the Arizona Supreme Court discounts it to, has always discounted it to irrelevancy. The cases cited by the state, that one in particular that I recognized in the, or that I recalled from the state supplemental brief was state versus Valencia. And there the Arizona Supreme Court, and I think the state mentioned this as one of the factors, recognized that Eddings required it to consider age as a relevant mitigating factor. And so I think the state said age. I can't speak to the specific cases that he cited. So in other words, other than Bokarski, but age, character. So there are some non-nexus mitigating factors which are considered, but they're not mental health ones. That's absolutely right, Your Honor. That's our argument. And I think that's what the cases bear out. Now, the one case that did involve mental health evidence is Bokarski. And Bokarski actually, although there is some language back and forth in the opinion, the court actually does find that evidence to be causally connected. And so it does get whatever weight the court decides to give it in that case. It's not reduced to relevancy because the court actually does find a causal connection in the facts of that case. So Bokarski is not helpful to the state's position. Then it becomes, assuming that your characterization of the case is correct, and I realize some of it you're doing by memory, so we're not going to completely hold you to it, but assuming this is correct and assuming we sort of understand the full picture, this now becomes a question of the level of generality at which we say the, I mean, your position is that they consistently failed to apply evidence in a certain class of cases. So it's no longer a, or it's not as I have understood before, that they never apply evidence. It is just in a certain class of cases. Is that, assuming that you're right about that, assuming that the cases bear that out, is that enough to show a sort of failure to apply evidence? Or, I mean, that they don't do it in a certain, maybe they always find, maybe they always find mental evidence to be unpersuasive, whether it's, or have, I'm sorry, very little weight. And that absolutely violates Eddings, Your Honor, because Eddings require, the Eighth Amendment requires individualized sentencing in capital cases. So if the Arizona, if we assume the Arizona court is doing what we say it's doing, and what it has appeared to do in every case, then the defendant who presents antisocial personality disorder as mental health mitigation, that's going to get the same weight, zero, because it's not causally connected, as someone like Mr. Stiers, who presents a long history of very severe and compelling and sympathetic mental health evidence. In fact, from injuries that arose during his time of service to his country. And so there's no individualized sentencing there. If all non-causally committed mental health evidence is given the same zero weight, then you've violated the Eighth Amendment by not. There's, just, let's pick something else as a, can race be an Eddings factor? Race itself? No, there may be aspects of, race might be an important part of the story, the social history of a defendant, how that defendant disagrees with race. Let's say it comes up in cases, and they say, look, we just don't consider race to be a significant factor. I know we may need to consider, we may not need to consider it. We take into account, we just don't think it's significant. And we don't think it's significant in this case, we don't consider it significant in the next case, and the next case, and the next case. You know, it just doesn't carry much weight with us. And I'm picking race because mental evidence is so odd because it's so tied up with mens rea and, you know, all the stuff that, the mental element of crimes. So I'm trying to find some other factor that isn't quite so tied up. So let's say the court says, okay, you know, we may need to take race into account. We just don't find it significant. We don't find it significant ever. We think, can they do that? It wouldn't offend the Eighth Amendment if what the court was saying is, we're not going to sentence people based on their race, not sentence people based on their race. It does offend- But we're not going to mitigate based on race. It does offend the Eighth Amendment if the court says, if you want to come in, if this defendant wants to come in and tell us a story about how race is a part of who he is, how it was important in his life, how it had effect on the way he grew up, the way he thinks, the way he reacts, the way he perceives the world, his relationships with other people. If they are saying categorically, we're not going to consider that, then yes, that would violate the Eighth Amendment. Or we give it minimal weight, de minimis weight. It can't have de minimis weight because it is a- To you, de minimis means no weight. It means, yeah, it means basically weight that could never possibly make a difference. Okay, I understand. So it's the same as zero, I guess. Okay, I got, I know. Now that your time is gone, let me ask you the basic question that I was going to ask you. Do we, in this case, because it's a death penalty case, weigh harmless error in a way that we might not in every other situation? Well, there is a heightened standard of review in capital cases, Your Honor, generally. Is the harmless error, the first question would be, and I think this Court's case is almost all set. Well, the first question would be, does he deny any of the facts that led to his conviction? And the answer would be no, he doesn't, I gather. And then you'd say, all right, there was some error in the sentencing. It wasn't perfect, but the error was harmless. In your view, in deciding that, we would use heightened standard? We wouldn't approach the question of harmless error the same way we might in every other case? Or would, or do you think that? There's an apparent split within this circuit, Your Honor, about whether Lockett-Eddings errors are subject to harmless error review. Our position is that they're not subject to harmless error review. So if there was a Lockett-Eddings error, relief is required. But even under a harmless error review standard, Mr. Stiers is still entitled to relief, because the mitigation in this case was so significant, we can't say that. Well, the offense was so significant, you see. When you shoot a 4-year-old child in the head three times, and that goes to the jury, the facts went to the jury, then you've got to say, would the jury, if it had known X, have reached a different result? Don't you? Isn't that the way you reason? Yes, under the harmless error review, yes. However, this Court has said, particularly in a number of cases, but particularly in Ert V. Ornosky, that especially, prejudice is especially likely in a sentencing error where the facts of the crime constitute the vast majority of the aggravator. So in this case, the facts of the crime are the only aggravators in this case. There are no others. And so there are a list of cases from this Court, like Stankiewicz, Douglas, Ainsworth, all versus Woodford. To get you going so far, but I wanted to get a basic answer, and I guess you've given me as succinct an answer as you can. You would give it a heightened look, I guess. Yes, it's entitled to heightened review as a capital case, and under any standard of harmless error review, he is entitled to relief. Thank you. Thank you. What jury? Judge Ferris asked you to go to the jury. I'm sorry. There was a jury? As far as sentencing? Yes. No. I just meant the review would be ---- I'm sorry. I just wanted to make sure I hadn't missed a point here. Judge Ferris asked you this would go to the jury. Oh, I'm sorry. But there was no jury. Yes. I should have said the tri-fact. This would go to a jury now. The tri-fact, okay. This would go to a jury now. There was no jury, and you're trying to get a jury. That's up to you. And when you say a heightened standard of review, are you talking about Brecht v. Adamson? Is that the heightened standard you mean? The heightened standard of review is the Eighth Amendment requirement that capital cases are entitled to a heightened standard of review, and that, I don't know that there's more of a clear definition of that. Okay. But as I said, under any standard, Mr. Stires is entitled to review because the mitigation was so significant in this case. Okay. Thank you. Thank you. Okay. Well, next argument in the Stires case, in the other case, this is the appeal from the denial of 60B motion.
judges: Kozinski, Farris, Bea